[Cite as *State v. Love*, 2021-Ohio-4451.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 19AP-666 |
| v. | : | (C.P.C. No. 18CR-1394) |
| Don M. Love, II, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 16, 2021

**On brief:** *April F. Campbell*, for appellant. **Argued:** *April F. Campbell.*

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, and *Daniel J. Stanley*, for appellee. **Argued:** *Sheryl L. Prichard.*

APPEAL from the Franklin County Court of Common Pleas

HESS, J.

{¶1} Defendant-appellant, Don M. Love, II, appeals from the September 11, 2019 judgment entry of conviction and sentence entered by the Franklin County Court of Common Pleas. For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶2} On March 23, 2018, appellant was indicted on one count of possession of heroin, a third-degree felony, and two counts of aggravated possession of drugs (one count for carfentanil and one for furanylfentanyl), both fifth-degree felonies. Each count included a firearm specification. Appellant pleaded not guilty, and the matter proceeded to a jury trial.

**{¶3}** During opening statements, the prosecutor explained that the charges stemmed from items found during the execution of a search warrant at a residence. The prosecutor told the jury it would "hear from the detective who conducted over a month-long surveillance of [appellant] prior to the search warrant being executed and the activities that [he] was engaged in." Defense counsel told the jury: "We have months of investigation, and at no point in time was [sic] any drugs ever found on [appellant]." Counsel stated: "I would also point out that I expect that the testimony will come out that the investigation actually started looking at his father, Don Love," "the guy whose house it really is," who managed to "walk away scot-free."

**{¶4}** The prosecution's primary witness was Detective Reuben Hendon of the Gahanna Police Department. He testified that the investigation in this case started when he interviewed a heroin addict who had been arrested for trying to pass a bad check. The individual said appellant's father was his dealer and had driven him to a location to pass a bad check to pay for heroin. The vehicle involved was registered to the father. In early February 2017, police began physical surveillance of 1977 Hegemon Crest Drive, Columbus, Ohio, a house "where the vehicle was found" and the father had been seen. The focus of the investigation shifted to appellant because he regularly left the house and drove "just blocks away," primarily to two locations, and quickly met with people "in what looked like hand-to-hand drug deal transactions." Appellant's father did not engage in this behavior "at all." Detective Hendon personally observed at least five of the meetings. Police did not stop anyone appellant met with because they "didn't want to blow the investigation." During the course of the investigation, police got a warrant to put a GPS tracking device on appellant's vehicle because he had engaged in counter-surveillance driving tactics which inhibited their ability to follow him. They observed "firearms going to and from the house" and appellant participate in a firearms exchange. In addition, in March 2017, they did a "trash pull" at the house and recovered a sandwich bag box and sandwich bags with missing corners. Detective Hendon explained how the corners are used to package drugs.

**{¶5}** On April 20, 2017, around 7:00 a.m., police executed a "no-knock" search warrant at the house. Detective Hendon acknowledged police could have allowed appellant to leave the house and tried to catch him with drugs in a traffic stop. However, he explained when guns and narcotics are involved, executing a search warrant is "high

risk enough," and the police were not willing to endanger the public by creating the possibility of a car chase.

**{¶6}** Detective Hendon estimated that if occupants of the house were looking outside, they could have seen police approaching about 15 seconds prior to their forced entry through the front door. Roughly eight or nine seconds after entry, appellant, who was upstairs, appeared on the left side of the stairway and came downstairs. Next, his aunt approached the stairway from the left and came downstairs "slowly on her buttocks." She had reportedly had "foot or leg surgery" and "couldn't get around very well." Her descent took 45 seconds to a minute with assistance. Finally, appellant's brother approached the stairway from the right and came downstairs. Appellant's father pulled up to the residence while police were executing the search warrant.

**{¶7}** A desk in an office to the left of the front door contained Suboxone strips and a plastic bag containing about 8 grams of an off-white powder found to include heroin, carfentanil, and furanylfentanyl. The second floor of the house had four bedrooms: three to the left of the stairway and one to the right of the stairway. In the first bedroom to the left of the stairway, there were Suboxone strips under the bed and a Glock 19 firearm in a crib. Detective Hendon testified that the bedroom contained mail and other items which suggested who lived in the room. However, he could not recall whose mail was in that room and did not elaborate on the other items in the room. In a bathroom directly across the hall from that bedroom, there were plastic bags on the floor and white powder on the vanity and around the rim of the toilet bowl which was later determined to be carfentanil.

**{¶8}** In the basement, there was a SIG firearm on a couch. There was a chair by the couch, near the weapon and two TV stands. On the floor by the chair was a cell phone which contained "tons of photos" of appellant, including "selfies." There was also a photo of the Glock in someone's left hand; the angle of the photo suggests the person holding the firearm took the photograph while holding the phone in the person's right hand. The Google account associated with the phone was donmlove@gmail.com. There was a wallet on a TV stand which contained cash but no identifying information. There was mail in the residence addressed to appellant but it is unclear from the record where it was found. There was also ammunition throughout the house, including a box on the desk in the

office. Testing revealed the two firearms found were operable but did not have any useable fingerprints.

{¶9}    At various times, defense counsel objected to Detective Hendon's testimony about events prior to the execution of the search warrant, such as the suspected drug transactions and trash pull. At one point, defense counsel referred to police observations of appellant during their surveillance as "prior acts." The trial court overruled the objections. At a later point, defense counsel requested a limiting instruction regarding Detective Hendon's testimony. None was given at that time. Subsequently, the trial court expressed its belief that Detective Hendon's testimony about the events leading to the house search were admissible because they went "to establish the investigation and why [police] focused on this house and why the defendant was the focus of the investigation and the resident of this house where the drugs were found." Later, the parties agreed on language for a jury instruction which would only allow the jury to consider testimony about the investigation leading to the house search warrant "to understand the background to the events that occurred on April 20th."

{¶10} During closing arguments, the prosecutor stated: "The officers conducted a full investigation targeting the house early on and would have picked up if other individuals were engaging in these sorts of quick hand-to-hand transactions that were observed." The prosecutor further stated: "Don Love Sr. was the initial target, and they abandoned it because he wasn't showing any sort of evidence of having or possessing these narcotics; Don Love II was." Defense counsel told the jury: "There was discussion about some potential meetings with my client and other people. You're going to get another instruction on that, and what that instruction is going to tell you is that that was only given to you for context. It is not to be used for you-- by you for any other purpose. In other words, just to kind of explain why they went there, but it's not to be used for the determination of guilt or innocence on these charges." Defense counsel also argued that "this gets down to a kid in a house where his dad does live, where his dad -- the only person we ever had come in here and even say that anybody ever sold drugs was the kid who said his father sold drugs." Defense counsel encouraged the jury to consider that "this investigation goes on for months and they claim that they've see [sic] [appellant] on five occasions go out of there. We have GPS tracking, which we learned about, which could have established where he was, where he was staying. They didn't bring that in.

They just bring in the little bit to try to confirm their presumption of guilt." During rebuttal, the prosecutor told the jury the judge would be giving it a limiting instruction that "[e]verything that happened before the 19th is to explain the investigation. You cannot use it as proof of someone committing the offense of trafficking."

**{¶11}** Prior to deliberations, the trial court instructed the jury:

> You heard evidence from witnesses tending to show the progression of the investigation. That evidence was permitted to explain the context of the execution of the search warrant on April 20th, 2017.

> You are not permitted to consider that evidence for any other purpose than placing the events of April 20th, 2017 in context.

**{¶12}** The jury found appellant guilty of all charges and specifications. The trial court imposed an aggregate sentence of 30 months in prison.

## II. Assignments of Error

**{¶13}** Appellant assigns three errors for our review:

Assignment of Error 1. Love's convictions should be reversed because unfair prejudice through the introduction of other acts evidence occurred, denying Love's right to a fair trial.

Assignment of Error 2. The State's evidence against Love was legally insufficient as a matter of law.

Assignment of Error 3. Love's convictions should be reversed because the evidence manifestly weighed against convicting him.

## III. Unfair Prejudice

**{¶14}** In his first assignment of error, appellant contends that we should reverse his convictions because he was unfairly prejudiced by the introduction of other-acts evidence, resulting in a denial of his right to a fair trial. Appellant asserts that the state introduced evidence that he was a drug trafficker in the months prior to the house search even though he "was only being prosecuted for possessing drugs found in a home four people occupied on April 20th, 2017." Specifically, he takes issue with Detective Hendon's testimony about appellant's involvement in suspected drug and firearms transactions and about the trash pull. Appellant asserts that "the trial court did not engage in an Evid.R. 403 analysis" to determine whether this evidence was unfairly prejudicial. Appellant maintains it was because the state violated Evid.R. 404(B) by not giving notice of its intent to introduce evidence under that rule, "thus proof of motive, opportunity, and lack of

mistake is not at issue in this case." He also asserts that "it is completely unnecessary to introduce multiple acts [of] suspected drug trafficking, if its only purpose [is] to show that an investigation into [him] began, resulting in a search warrant executed at the residence in question." Quoting *State v. Zimmerman*, 2019-Ohio-721, 132 N.E.2d 1185, ¶ 31 (10th Dist.), appellant claims that " 'nothing other' than the fact that an investigation into the residence began was necessary to show that an investigation into the residence did in fact begin." Appellant asserts that by introducing the evidence, the state "purposely raised the odds" that the jury would convict him for being a drug trafficker and not because he actually possessed the drugs at issue. He also claims that he suffered unfair prejudice because the evidence of guilt was not overwhelming. He emphasizes that the trial court did not immediately instruct the jury to disregard the evidence and argues that the court's limiting instruction "was insufficient to overcome the prejudicial error that occurred."

{¶15} Evid.R. 404(B) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶16} The Supreme Court of Ohio has set forth a three-part analysis for determining the admissibility of other-acts evidence:

(1) the evidence must be relevant, Evid.R. 401, (2) the evidence cannot be presented to prove a person's character to show conduct in conformity therewith but must instead be presented for a legitimate other purpose, Evid.R. 404(B), and (3) the probative value of the evidence cannot be substantially outweighed by the danger of unfair prejudice, Evid.R. 403.

*State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 72, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

{¶17} Appellant's argument focuses on the unfair prejudice component of the analysis. Evid.R. 403(A) states: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice * * *." "[T]he trial court's weighing of the probative value of admissible evidence against the danger of unfair prejudice to the defendant pursuant to Evid.R. 403(A) involves an exercise of judgment and will be reviewed for an abuse of discretion." *State v. Worley*, 164 Ohio St.3d 589, 2021-Ohio-2207, 174 N.E.3d 754, ¶ 117, citing *State v. Hartman*, 161

Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 30.  An abuse of discretion is "an unreasonable, arbitrary, or unconscionable use of discretion,  or * * * a view or action that no conscientious judge could honestly have taken."  *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.

{¶18} The Supreme Court of Ohio has stated:

"Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice.  If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403.  Emphasis must be placed on the word 'unfair.'  Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision.  Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial.  Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect."

*Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172, 743 N.E.2d 890 (2001), quoting *Weissenberger's Ohio Evidence*, Section 403.3, at 85-87 (2000).  "[S]ome important considerations for trial courts" include "the extent to which the other-acts evidence is directed to an issue that is actually in dispute," "whether the prosecution is able to present alternative evidence to prove the same fact through less prejudicial means and whether the other-acts evidence is probative of an essential element of the crime or an intermediate fact in the case."  *Hartman* at ¶ 31-32.  When other-acts evidence "is only slightly probative of a nonpropensity theory but has a high likelihood of unfairly prejudicing the defendant or confusing or misleading the jury, the evidence must be excluded."  *Id.* at ¶ 33.

{¶19} Initially, we address appellant's assertion that the trial court did not engage in an Evid.R. 403(A) analysis.  The trial court did not explicitly address the rule in resolving whether to admit the evidence at issue.  However, "Evid.R. 403(A) does not require a trial court to explicitly state its findings regarding its application of the rule."  *State v. Tunstall*, 12th Dist. Butler No. CA2019-06-090, 2020-Ohio-5124, ¶ 44.

{¶20} Appellant's suggestion that he suffered unfair prejudice due to a lack of Evid.R. 404(B) notice is not well-taken.  Evid.R. 404(B) provides that "[i]n criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."  While lack of notice might prejudice one's ability to prepare a defense, that is not the type of "unfair

prejudice" Evid.R. 403(A) addresses. *See Oberlin* at 172, quoting *Weissenberger's Ohio Evidence*, Section 403.3, at 85-87 (" 'Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision' "). We also observe that appellant has not demonstrated a lack of notice in this case. Evid.R. 404(B) does not require that the state give or file written notice, defense counsel did not argue lack of notice at trial, and appellant has not cited any part of the record showing no notice was given.

**{¶21}** We do, however, agree with appellant's suggestion that in reviewing his Evid.R. 403(A) challenge, we may not consider the evidence at issue to be probative of matters such as motive, opportunity, or lack of mistake. But this is not due to any lack of Evid.R. 404(B) notice from the state. Rather, it is because the trial court allowed the jury to consider the evidence for a singular purpose, "placing the events of April 20, 2017 in context." Although the state claims that the evidence is admissible for other reasons, it did not file a cross-appeal challenging the trial court's limiting instruction.

**{¶22}** Despite the limited purpose for which the trial court allowed the evidence, we cannot conclude the court abused its discretion when it implicitly found the evidence's probative value was not substantially outweighed by the danger of unfair prejudice. Appellant's reliance on *Zimmerman* for the position that the prosecution had a less prejudicial alternative to presenting the evidence is not well-taken. In that case, the defendant was charged with kidnapping, and the victim testified that she was severely addicted to heroin at the time of the offense. *Zimmerman*, 2019-Ohio-721, 132 N.E.2d 1185, at ¶ 2-3. A patrol officer testified that the victim told him her story, and he passed the information along to detectives. *Id.* at ¶ 8. Over objection, the trial court allowed the officer "to recount much of the substance of what [the victim] told him, largely repeating the narrative [the victim] offered before the trial court cut off his testimony as improper hearsay." *Id.* The prosecutor initially claimed the testimony was not being offered for the truth of the matters asserted but later indicated that the purpose of the testimony was to improve the victim's credibility. *Id.*

**{¶23}** On appeal, the defendant asserted that the trial court had erred in allowing the state to bolster the victim's credibility through the patrol officer's testimony. *Id.* at ¶ 27. The state "sought to justify the admission of this testimony for the purpose of showing the basis on which and how the officer's investigation proceeded * * * ." *Id.* at ¶ 31. However, we explained that

the officer's "investigation" consisted of taking down [the victim's] statement and delivering it to detectives at headquarters. Nothing other than the fact that [the victim] gave the officer a statement about an alleged crime is necessary to establish for the jury the course of that limited "investigation." This purpose did not supply a need for the officer to recount the substance of any of what [the victim] told him and the only conceivable purpose of that testimony was to suggest the truth of [the victim's] statements by showing that she had told the same story before. The trial court then reversed course and sustained the objection. But this happened only after the officer had repeated much of [the victim's] narrative and* * *the trial court did not instruct the jury to disregard the improper testimony, but rather, allowed further (albeit more limited) commentary by the officer on direct examination about what [the victim] had said. This was error.

(Citations omitted.) *Id.*

{¶24} *Zimmerman* is inapposite. In *Zimmerman*, the victim's hearsay statement did not give the jury any insight into the officer's investigation because he did not "investigate" anything—he just transcribed and delivered the statement. The investigation in this case was significantly longer and more complex than the one in *Zimmerman*. The purpose of the evidence at issue—helping the jury put in context the events that occurred the day police executed the house search warrant—supplied a need for Detective Hendon to recount the details of that investigation. That day was the culmination of approximately two months of surveillance. The suspected drug and firearms transactions and items found during the trash pull are part of the background of the charged offenses. *See generally State v. Sealey*, 10th Dist. Nos. 99AP-1405 & 00AP-1079, 2000 WL 1808298 (Dec. 12, 2000), *4 ("Background information is admissible to give the jury the setting of the case"). Police relied on these events and items to secure the warrant for the house, which resulted in the discovery of the drugs at issue. These details gave the jury a complete picture of the actions of police. They filled in gaps in the defense's version of events, which emphasized select details of the investigation to bolster the theory that appellant's father was the real culprit and that police had made appellant the focus of the investigation for no reason.

{¶25} While the evidence was certainly prejudicial, appellant has not demonstrated that the danger of *unfair* prejudice was such as to warrant its exclusion. The evidence would not appeal to a jury's emotions rather than intellect. The brief suspected drug transactions, firearms exchange, and sandwich bags and box from the

trash pull (which do not specifically implicate appellant) do not have a tendency to arouse emotional sympathies, evoke a sense of horror, or appeal to an instinct to punish. The limiting instruction the trial court gave, which both parties stressed during closing arguments, prevented any danger that the jury would consider the evidence at issue as proof of appellant's character and that he acted in conformity therewith in committing the possession offenses. The jury is presumed to have followed the court's limiting instruction. *State v. Hicks*, 10th Dist. No. 18AP-883, 2020-Ohio-548, ¶ 23. There is nothing in the record to support the conclusion that the guilty verdicts were the result of improper consideration of the evidence at issue. And as we explain below, there was ample evidence to support appellant's convictions.

{¶26} For the foregoing reasons, we overrule the first assignment of error.

## IV. Sufficiency of Evidence

{¶27} In his second assignment of error, appellant contends that there is insufficient evidence to support his convictions. Appellant maintains that the state failed to establish that he constructively possessed any of the drugs at issue. He argues that the drugs were located in common areas of the home accessible to him, his aunt, his brother, and his father. He asserts that mere access to an area which is accessible to multiple individuals is insufficient to establish possession. Appellant claims there is no other evidence connecting him to the drugs, noting that police did not find him "right next to" the drugs or have fingerprint evidence showing he had possessed them.

{¶28} "In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Johnson*, 10th Dist. No. 20AP-469, 2021-Ohio-3220, ¶ 14, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds* as stated in *State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4. In conducting this review, " 'an appellate court does not engage in a determination of witness credibility; rather it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime.' " *State v. Flood*, 10th Dist. Nos. 18AP-206 & 18AP-738, 2019-Ohio-2524, ¶ 16, quoting *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4.

{¶29} Appellant was convicted of one count of possession of heroin and two counts of aggravated possession of drugs, one count for carfentanil and the other for furanylfentanyl. All three counts required proof of a violation of R.C. 2925.11(A), which states: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶30} At issue here is the element of possession. " 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). We have explained:

> Possession of a controlled substance may be actual or constructive. A person has actual possession of an item when it is within his or her immediate physical control. "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976). "Circumstantial evidence alone may be sufficient to support the element of constructive possession. Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, constitute evidence from which the trier of fact can infer whether the defendant had constructive possession over the subject drugs. The mere presence of an individual in the vicinity of illegal drugs is insufficient to establish the element of possession, but if the evidence demonstrates the individual was able to exercise dominion or control over the drugs, he or she can be convicted of possession." (Internal citations omitted.) *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 28 (10th Dist.).

(Citations omitted.) *State v. Edwards*, 10th Dist. No. 17AP-738, 2019-Ohio-3012, ¶ 35.

{¶31} After viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found that appellant had constructive possession of the carfentanil, heroin, and furanylfentanyl. Police found powdered carfentanil in the upstairs bathroom just to the left of the stairway. There was powder on the vanity and rim of the toilet bowl, and there were empty plastic bags on the floor, suggesting someone had recently emptied bags of carfentanil into the toilet. There is evidence that person was appellant. When police entered the house, appellant was in the vicinity of the bathroom, i.e., upstairs to the left of the stairway. The state presented evidence that appellant lived in the bedroom closest to that bathroom. That bedroom contained a Glock 19, and there was a photo of the firearm in someone's hand on the cell phone in the basement. The angle of the photo suggests the person holding the firearm

took the photo while holding the phone in the person's right hand.  The Google account related to that phone was "donmlove@gmail.com," and the phone contained numerous photos of appellant, including "selfies," suggesting the phone and firearm belonged to appellant.  Appellant had somewhere between 8 and 24 seconds (depending on whether he had seen police approaching the house) to dispose of the carfentanil in the toilet in response to police presence.  From these facts, the jury could conclude appellant was able to exercise dominion and control over the carfentanil upstairs.

{¶32} The jury could also conclude that appellant was able to exercise dominion and control over the powdered mixture of drugs found in the desk.  One of the drugs in the bag, carfentanil, is the same drug found in the upstairs bathroom.  Another drug in the desk, Suboxone, was found in only one other location in the house—the bedroom in which appellant lived.  Police also found a box of ammunition on the desk, and evidence connected the only firearms in the house to appellant.  There was the Glock 19 which appeared to belong to appellant based on the contents of the cell phone, and there was the SIG firearm in the basement, which based on photographic evidence, appears to have been within arm's reach of appellant's cell phone.

{¶33} For the foregoing reasons, we reject appellant's challenge to the sufficiency of the evidence and overrule the second assignment of error.

## V.  Manifest Weight of the Evidence

{¶34} In his third assignment of error, appellant contends that his convictions are against the manifest weight of the evidence.  Appellant asserts that the jury lost its way in finding him guilty because the state established only that he had "mere access" to the drugs, and evidence showed he had less access to the drugs than others.  Appellant asserts that he had less time to access the carfentanil upstairs than others on the scene because he went downstairs first, eight seconds after police entered the house.  Appellant also asserts that he was "the least one likely to have access to" the drugs in the desk because police did not find anything in the office to show it was his, such as his fingerprints or DNA.  He maintains that "the proof was that many people received mail at the home, and that four people were there during the execution of the search warrant."

{¶35} "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing

belief." *State v. Cassell*, 10th Dist. Nos. 08AP-1093 & 08AP-1094, 2010-Ohio-1881, ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1164, ¶ 25. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ' "thirteenth juror" ' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.E.2d 652 (1982).

{¶36} " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). " 'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175. "[W]e are guided by the presumption that the jury * * * 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "Accordingly, we afford great deference to the jury's determination of witness credibility." *State v. Albert*, 10th Dist. No. 14AP-30, 2015-Ohio-249, ¶ 14.

{¶37} This is not the exceptional case in which the evidence weighs heavily against the convictions. As we detailed above, the state presented evidence that appellant had more than "mere access" to the drugs. Regarding the carfentanil upstairs, it is true appellant's aunt and brother were upstairs longer than appellant after police entered the home. However, there was evidence appellant's aunt had mobility issues, which would have hindered her ability to quickly react to police presence and dispose of evidence in the upstairs bathroom. Moreover, appellant's brother was to the right of the stairway when police entered the home, i.e., the opposite side from where the bathroom was. Regarding the bag of drugs in the office, it is true that the state did not present evidence that appellant's DNA or fingerprints were on the bag or in the office. However, the state's failure to perform testing on items in that room does not somehow show that appellant

had less access to the drugs there than other occupants of the house. And as we explained above, there is evidence that appellant was able to exercise dominion and control over those drugs.

**{¶38}** Having reviewed the entire record, weighed the evidence and all reasonable inferences, and considered the credibility of witnesses, we find the jury, in resolving conflicts in the evidence, did not clearly lose its way and create such a manifest miscarriage of justice that appellant's convictions must be reversed and a new trial ordered. Accordingly, we reject appellant's weight of the evidence challenge and overrule the third assignment of error.

## VI. CONCLUSION

**{¶39}** Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

Judge Michael D. Hess, Fourth Appellate District,
sitting by assignment in the Tenth Appellate District.
_____