[Cite as *State v. Cummings*, 2018-Ohio-3993.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 106261 and 106265**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# KENSHAWN CUMMINGS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-16-607962-A and CR-16-608614-A

**BEFORE:** Kilbane, P.J., McCormack, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** September 27, 2018

[Cite as *State v. Cummings*, 2018-Ohio-3993.]

**ATTORNEY FOR APPELLANT**

Mark R. Marshall
P.O. Box 451146
Westlake, Ohio 44145


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
Andrea N. Isabella
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


MARY EILEEN KILBANE, P.J.:

**{¶1}** In this consolidated appeal, defendant-appellant, Kenshawn Cummings ("Cummings"), appeals his convictions.[1] For the reasons set forth below, we affirm.

**{¶2}** Over the course of 2016 and 2017, Cummings was charged in the following six cases: CR-16-607464-B; CR-16-607962-A; CR-16-608613-A; CR-16-608614-A; CR-16-610231-A; and CR-17-617167-A. Case Nos. CR-16-607962-A and CR-16-608614-A relate to the instant appeal, and the remaining cases relate to Cummings's companion appeal — *State v. Cummings*, 8th Dist. Cuyahoga Nos. 106262, 106263, 106264, and 106268.

**{¶3}** In July 2016, Cummings was charged in Case No. CR-16-607962-A with aggravated robbery (Count 1), robbery (Count 2), felonious assault (Count 3), and petty theft (Count 4). The charges arise from an incident in April 2015 and name Vicki Leonard ("Leonard") as the victim.

---

[1] This appeal is a companion case to the consolidated appeal in *State v. Cummings*, 8th Dist. Cuyahoga Nos. 106262, 106263, 106264, and 106268.

{¶4} In August 2016, Cummings was charged in Case No. CR-16-608614-A with attempted murder (Count 1), two counts of felonious assault (Counts 2 and 3), two counts of aggravated robbery (Counts 4 and 5), kidnapping (Count 6), the discharge of a firearm on or near prohibited premises (Count 7), and two counts of having a weapon while under disability ("HWWUD") (Counts 8 and 9).[2] The charges arise from an incident in August 2016 and name Collin Langham ("Langham") as the victim.

{¶5} On March 3, 2017, the trial court granted the state's request to join Case No. CR-16-607962-A (the aggravated robbery case) with Case No. CR-16-608614-A (the attempted murder case) for trial, which commenced before a jury three days later, on March 6, 2017. The following evidence was adduced at trial.

Attempted Murder Case

{¶6} Langham testified that on August 1, 2016, he was visiting a friend at the Triumph Towers apartment complex in Euclid, Ohio. He left his friend's apartment around 6:00 p.m. Langham exited the apartment building from the back, which led to the rear parking lot. On his way out, Langham saw a few acquaintances and spoke with them for approximately five to ten minutes. He was then approached by Cummings, who Langham knew as "Ken." Langham testified that he knew Cummings and "help[ed] him from time to time[.]" He would "give him a dollar, something, maybe give him food, something. Little stuff like that[.]"

---

[2]Each of Counts 1-7 carried one- and three-year firearm specifications.

**{¶7}** The other male acquaintances walked away when Cummings approached Langham. At that point, Cummings said to Langham "[g]ive me what you got." Langham replied, "I'm not giving you anything." From there, Cummings further approached Langham and shot him in the leg before fleeing the scene. Langham sought assistance from other people at the apartment complex. One tenant heard the gunshot and called 911. Langham was taken by an ambulance to the hospital. Langham's leg was fractured, and the bullet was lodged in the inner area of his knee.

**{¶8}** Euclid Police Officer Frank Royce ("Officer Royce") responded to a call that shots were fired at the Triumph Towers on August 1, 2016. Officer Royce spoke with Langham while he was at the hospital. At that time, Langham indicated that he was shot by "Ken." Langham described "Ken" as a black male in his 20s, medium complexion, approximately six feet tall, thin build, wearing a white V-neck Versace T-shirt, black pants, and white shoes.

**{¶9}** Euclid Police Detective Joshua Schultz ("Detective Schultz") testified about his investigation of the case. He obtained surveillance video from the apartment complex, which was played for the jury. The video of the parking lot captured the moment when Langham was shot. From that video, the assailant can be seen wearing a white shirt, dark pants, and white shoes. The other surveillance videos clearly captured Cummings walking into the apartment complex minutes before the shooting, wearing a white Versace shirt, black pants, and white shoes. Detective Schultz recognized Cummings from the video. Thereafter, Detective Schultz created a photo array and had

another officer present it to Langham. Langham identified Cummings as the assailant with "100% certainty." A search warrant was then executed upon Cummings's residence, where officers located a white V-neck Versace T-shirt, a pair of black pants, and a pair of white high-top shoes.

{¶10} Sergeant Philip Christopher ("Sergeant Christopher") of the Cuyahoga County Sheriff's Office, testified about three jail calls placed by Cummings while incarcerated. The three jail calls were from August 4, 2016, August 25, 2016, and September 28, 2016. In the September 28th jail call, Cummings is speaking with another male. Seven minutes into the conversation, Cummings says, "I did this s * * *[.]" It appears that the other male then immediately ends the call.

<u>Aggravated Robbery Case</u>

{¶11} Leonard testified that around 10:30 p.m. on April 25, 2015, she was walking back to her Euclid apartment from a nearby store when she observed a male jump out from between two cars in her apartment complex's parking lot. The male, later identified as Cummings, ran up to her, kicked her in the chest, knocking her to the ground. Cummings then stole her purse and fled the scene. Leonard, who was 62 years old at the time, laid on the ground for approximately 15 minutes before getting herself up. She was unable to call 911 because her cell phone was in her purse, which was stolen. The next morning she was still in pain, so she called 911 with someone else's phone and was taken by ambulance to Euclid Hospital, where she stayed for four days. She sustained an injury to her vertebrae, a mild fracture, and a bruise to her chest.

**{¶12}** Special Agent Brian Collins ("Agent Collins") testified about his investigation of the case.[3] He spoke to Leonard while she was at the hospital. He obtained Leonard's cell phone number and subpoenaed her phone records. Based on the phone calls made after Leonard's phone was stolen, Agent Collins learned that an individual named Quintin Hill was contacted by Cummings from Leonard's cell phone. Agent Collins then created a photo array containing Cummings's picture. Leonard identified Cummings as the assailant with 75 percent certainty.

**{¶13}** With regard to the attempted murder case, the jury found Cummings guilty of two counts of felonious assault, two counts of aggravated robbery, kidnapping, and the discharge of a firearm on or near prohibited premises, all with the accompanying specifications. The jury also found him guilty of one count of HWWUD. The remaining HWWUD count was dismissed by the state. The jury found Cummings not guilty of attempted murder. With regard to the aggravated robbery case, the jury found Cummings guilty of all counts — aggravated robbery, robbery, felonious assault, and petty theft.

**{¶14}** In June 2017, Cummings filed a motion for acquittal under Crim.R. 29(C) or in the alternative a motion for new trial under Crim.R. 33. The trial court held a hearing on the matter one month later. At the hearing, Cummings argued that the state failed to

---

[3]At the time of the incident, Collins was a detective with the Euclid Police Department, but since then he has been employed as a special agent with the Federal Bureau of Investigation.

timely produce the jail calls to defense counsel. The state argued that Cummings's motion was untimely. The state further argued that Cummings's substantial rights have not been materially affected. The trial court denied the motion, finding that Cummings did not demonstrate that the late disclosure of the jail calls prejudiced him "in light of the overwhelming evidence of his guilt as determined by the jurors of him in one case shooting a victim on video."

{¶15} In August 2017, Cummings entered into a package plea agreement on his four remaining cases. Thereafter, a sentencing hearing was held on all his cases. The trial court sentenced Cummings to an aggregate of 11 years in prison in the aggravated robbery case and an aggregate of 14 years in prison in the attempted murder case. The court ordered the 14-year sentence be served consecutive to the 11-year sentence. The court further ordered that these two sentences be served concurrently to the remaining four cases, which were also concurrent to each other. In total, the trial court sentenced Cummings to 25 years in prison.

{¶16} Cummings now appeals, raising the following two assignments of error for review.

### Assignment of Error One

The trial court abused its discretion by denying [Cummings's] motion for a new trial pursuant to [Crim.R. 33].

### Assignment of Error Two

The trial court abused its discretion by denying [Cummings's] motion for a mistrial based upon violation of the oral motion in limine prohibiting the

state's witnesses from advertently or inadvertently referencing that [Cummings] was either known by the police department or had other dealings with the police department.

Motion for New Trial

{¶17} In the first assignment of error, Cummings argues the trial court abused its discretion by failing to grant a new trial under Crim.R. 33(A)(2) because the state did not provide to defense counsel the jail call it played to the jury in which Cummings states, "I did this s * * *[.]"

{¶18} A new trial may be granted under Crim.R. 33(A)(2), if the misconduct of the prosecution materially affected Cummings's substantial rights. Crim.R. 33(B) provides that a motion for new trial must be filed within 14 days after the verdict has been rendered, unless a defendant claims the motion was based on the grounds of newly discovered evidence. Additionally, Crim.R. 33(C) requires that a motion under Crim.R. 33 (A)(2) must be sustained by an affidavit showing its truth.

{¶19} A Crim.R. 33 motion for a new trial is addressed to the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Schiebel*, 55 Ohio St.3d 71, 77, 564 N.E.2d 54 (1990). "'The term "abuse of discretion" * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

{¶20} In the instant case, Cummings's motion for new trial was not timely filed as required by Crim.R. 33(B), nor did he seek leave to file his motion properly. In order to

obtain leave, a defendant must demonstrate by clear and convincing evidence that they were unavoidably prevented from discovering the new evidence within the time period provided by Crim.R. 33(B). A party is "unavoidably prevented" from filing a motion for a new trial if they have "'no knowledge of the existence of the [evidence or] ground supporting the motion for [a] new trial and [with reasonable diligence,] could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial[.]'" *State v. Sutton*, 2016-Ohio-7612, 73 N.E.3d 981, ¶ 12 (8th Dist.), quoting *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (10th Dist.1984). Once the trial court grants leave, the motion for new trial must be filed within seven days, and the motion must be supported by an affidavit demonstrating the existence of the grounds for the motion. Crim.R. 33(B*).

**{¶21}** Cummings did not seek leave of the trial court within 14 days after the verdict to file the motion, nor did he include an affidavit demonstrating the existence of the grounds for the motion.[4] Rather, Cummings filed his motion for a new trial more than three months after the jury verdict. Nonetheless, the trial court entertained the motion and held a hearing on the matter. At the hearing, the court stated there was "good reason" to consider Cummings's untimely motion.

---

[4]We note that a motion for a new trial based on claims of prosecutorial misconduct under "Crim.R. 33(A)(2) may be summarily denied when not accompanied by an affidavit attesting to the facts upon which the motion is based." *State v. Morgan*, 8th Dist. Cuyahoga No. 63666, 1992 Ohio App. LEXIS 6581, 10 (Dec. 31, 1992), citing *State v. Rogers*, 68 Ohio App.3d 4, 587 N.E.2d 381 (9th Dist.1990); *Toledo v. Stuart*, 11 Ohio App.3d 292, 465 N.E.2d 474 (6th Dist.1983).

{¶22} While the trial court did not need to address the merits of the motion for a new trial because of the facially, apparent procedural and substantive deficiencies, the trial court gave Cummings extra consideration by allowing him another opportunity to present his arguments. As a result, we likewise consider the merits of Cummings's motion.

{¶23} A review of the record in the instant case reveals defense counsel objected to the jail calls being introduced as evidence at trial. The state did not provide defense counsel with the jail calls until the week of trial. The state explained that the jail calls were not provided until the week of trial because Cummings made "numerous, numerous calls" while he was in jail for the previous seven months. The state further explained that it had to go through all the calls and narrow them down to the calls that were relevant. The state ultimately deemed that three jail calls were relevant. In the last call, the state explained that Cummings was speaking to a relative and goes on to say how the prosecutor's office is doing everything in its power to railroad him. Cummings states, "I know that I did this s * * *[.]" At that point, the telephone conversation drops. The state's position was that Cummings was "making a full admission that even though he believes [the prosecutor's] office is railroading him, that he knows he's in trouble at that point because he did it." Defense counsel was not able to review the calls on his personal computer because of software issues. The state offered defense counsel access to a "blank computer" for defense counsel and Cummings to review the calls. The trial court then gave defense counsel as much time as needed to speak with Cummings and

review the calls. After a recess, the trial proceeded with the state calling Sergeant Christopher to the stand.

{¶24} Months later, defense counsel and Cummings reviewed all of the evidence provided by the state, including all the jail call tapes in preparation for Cummings's other criminal cases. After listening to these tapes, it was discovered that the state never provided defense counsel with a copy of the recorded jail call containing the statement from Cummings that "I did this s * * *," which was played for the jury at Cummings's joint trial.

{¶25} During the hearing on Cummings's motion for a new trial, defense counsel argued that because he was able to actually listen to the tapes "moments before Sergeant Christopher testified, nothing jumped off the page at me." Defense counsel objected to the calls before and after they were played. He did not "stand in front of the jury and strenuously object because * * * that [was] a strategic decision on my part. I'm not going to stand there and repeatedly object to the stuff that's coming in." The trial judge asked defense counsel to explain why he did not recognize the calls were different from what he listened to with Cummings and what was played in court. Defense counsel explained that he was preparing for five cases, which were serious. There was a multitude of discovery in these cases. He knew at trial that the state's intention was to play them.

{¶26} The state acknowledged upon checking the disc that was provided to defense counsel at trial, that the disc did not contain the correct jail call. The state

reiterated that, at trial, it advised defense counsel the significance of the jail calls. The state also reiterated the overwhelming evidence presented against Cummings at trial — surveillance video of Cummings shooting Langham, the exact clothing that was caught on surveillance was also seized as part of the execution of the search warrant by Euclid police, the photo array, as well as, the in-court identifications made by both victims.

**{¶27}** The trial court found that the state's failure to disclose the jail call was not willful, nor did Cummings argue that it had been. The court concluded that Cummings "has not shown that the late disclosure has prejudiced him in light of the overwhelming evidence of his guilt as determined by the jurors * * * in one case shooting a victim on video" and the "compelling testimony of [Leonard] who identified [Cummings] as physically accosting her, knocking her down, taking her belongings."

**{¶28}** Based on these facts, we cannot say the prosecuting attorney materially affected Cummings's substantial rights under Crim.R. 33(A)(2).

**{¶29}** Thus, the first assignment of error is overruled.

<u>Motion for a Mistrial</u>

**{¶30}** In the second assignment of error, Cummings argues the trial court abused its discretion when it denied his motion for mistrial because the state violated his motion in limine prohibiting the state's witnesses from referencing that he was either known by the Euclid Police Department or had other dealings with the police department.

**{¶31}** The Ohio Supreme Court, in *State v. Treesh*, 90 Ohio St.3d 460, 2001-Ohio-4, 739 N.E.2d 749, has stated:

[t]he granting or denial of a motion for mistrial rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened * * *." *State v. Reynolds* (1988), 49 Ohio App.3d 27, 33, 550 N.E.2d 490, 497. The granting of a mistrial is necessary only when a fair trial is no longer possible. *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1, 9.

*Id.* at 480.

{¶32} In the instant case, Cummings's defense counsel made an oral motion in limine at the commencement of trial seeking

to limit the testimony to these cases that we are currently in trial for, and only these cases. Any officers that would be testifying or witnesses that would be testifying about other information or other investigations regarding [Cummings], I would ask the Court to encourage the State to admonish those witnesses, prevent them from identifying other cases that [Cummings] may have been involved in, or was a suspect in, or is currently a defendant in.

{¶33} The state responded that it was fully aware that the trial was in reference to only two cases that were joined and that it had no intention of addressing any other of Cummings's three pending cases. The trial court then ordered that no witnesses shall talk about any other case or investigation.

{¶34} Cummings contends there were three separate incidents at trial in which the state's witnesses made intimations that he was previously known to the Euclid Police Department. Specifically, Detective Schultz testified that he was familiar with

Cummings. Moreover, Euclid Police Detective Susan Schmid ("Detective Schmid") testified that Cummings's name was known to the Euclid Police Department. Lastly, Leonard testified when she identified Cummings in a photo array that Euclid police officers stated, "[w]e knew it." Defense counsel's objections to these statements were sustained by the trial court, and the court gave instructions to the jury to disregard the statements by Detective Schultz and Detective Schmid.

{¶35} Defense counsel also made an oral motion for mistrial. The state responded that none of the questions posed were purposefully meant to seek an answer that would suggest that Cummings was previously known to the Euclid Police Department. Additionally, the state explained the jury was aware that Cummings, at some level, was already known to Euclid Police Department because he had two pending cases that were joined for trial, and the HWWUD count was also tried before the jury.

{¶36} The trial court denied the motion, finding that Cummings was not prejudiced. The court stated:

> It's not unfairly prejudicial. The Court made its curative instruction immediately. There is no indication that there was anything intentionally done. I don't need to get to that analysis, because I find there is no unfair prejudice to [Cummings].
>
> The other benign inference is of course the other delinquency adjudication, which they will learn about shortly from his weapon under disability count.
>
> * * *
>
> And I believe there was only one question really that was poorly asked about knowing [Cummings's] name, and the Court cured that as soon as — as soon as it came out.

So I'm going to find that there — the motion [for mistrial] is not well taken.

**{¶37}** Based on the foregoing reasoning, we cannot say the trial court's decision was unreasonable, arbitrary, or even unconscionable.

**{¶38}** Accordingly, the second assignment of error is overruled.

**{¶39}** Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

TIM McCORMACK, J., and
MARY J. BOYLE, J., CONCUR