[Cite as *State v. Fisher*, 2021-Ohio-3788.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO.  2-21-06

    v.

DWAYNE M. FISHER, JR.,               O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Auglaize County Municipal Court
Trial Court No. 2020 CRB  00401

Judgment Affirmed

Date of Decision:  October 25, 2021

APPEARANCES:

    *Jeremy M. Tomb*  for Appellant

    *Reed D. Searcy*  for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Dwayne Fisher ("Fisher"), brings this appeal from the April 13, 2021, judgment of the Auglaize County Municipal Court sentencing him to 300 days in jail after Fisher was convicted by a jury of failure to comply with order or signal of police officer in violation of R.C. 2921.331(B), a first degree misdemeanor, attempted theft in violation of R.C. 2923.02(A) and R.C. 2913.02(A)(1), a second degree misdemeanor, and criminal trespass in violation of R.C. 2911.21(A)(1), a fourth degree misdemeanor.

*Background*

{¶2} Wapak Ford is a vehicle dealership in Wapakoneta that also services local police cruisers. The cruisers are generally kept in an area called "the bullpen," which is a fenced section of the dealership property. On July 10, 2020, it was discovered that a large hole had been cut in the bullpen's fence and that the wheels, tires, headlights, and taillights were missing from a police cruiser. The police cruiser had been left on cinder blocks. There were no cameras observing the bullpen area and no suspects were identified from the incident.

{¶3} On July 19, 2020, a married couple was browsing vehicles at Wapak Ford when they noticed a suspicious individual in the bullpen who was stretched across the front of a police cruiser with the cruiser's hood up. At first the couple thought the individual was working on the police cruiser, but when the individual

saw the couple, the individual moved out of the couple's view. The couple found it suspicious that the individual did not continue working on the vehicle. Shortly thereafter the couple observed a dark-colored ford truck with camo trim across the bottom driving away from the area. They reported the matter to the police. It was eventually discovered that the police cruiser in the bullpen was missing its hood.

{¶4} Minutes after the couple observed the truck driving away from the dealership, a black truck with camo trim was observed driving at an excessive rate of speed on a residential street in Wapakoneta. Residents thought the driver was doing at least 50 mph in a 25 mph zone. Pictures of the truck were captured on one resident's security camera. When the truck stopped at one point, a resident observed the license plate, HQW3632, and reported the matter to the police.

{¶5} Wapakoneta police officers quickly located a vehicle matching the descriptions provided from the dealership and the residential neighborhood. When one officer activated his overhead lights to initiate a traffic stop of a black Ford truck with camo trim, the driver sped off. A chase ensued through streets and alleyways of Wapakoneta. Multiple officers attempted to follow the truck but it was driving at dangerous speeds down residential roads. Officers followed the truck outside of Wapakoneta but they eventually lost sight of the vehicle and stopped their pursuit.

{¶6} Approximately fifteen minutes after officers lost sight of the truck they were pursuing, an Auglaize County Sheriff's Deputy located a truck matching the

description with the license plate HQW3632. The deputy activated his overhead lights and initiated a traffic stop. The individual driving the truck, Fisher, pulled over immediately.

{¶7} Fisher denied being involved in a police chase. In fact, he denied being in Wapakoneta at all that day. Fisher told officers that he was a mechanic, though he indicated he would prefer not to state where he worked.

{¶8} Officers located numerous suspicious items in Fisher's truck such as a ski-mask, black gloves, and various tools. Most suspicious were "three nuts with washers on them" that were "the exact same size that was used to hold a hood onto those hood hinges." (Tr. at 257-258). The next day, the hood that had been attached to the police cruiser in the Wapak Ford bullpen was located in a cornfield in an area near where the Ford truck with the camo trim had been lost during pursuit.

{¶9} On July 20, 2020, Fisher was charged with "failure to comply with order or signal of police officer" in violation of R.C. 2921.331(B), a first degree misdemeanor, attempted theft in violation of R.C. 2923.02(A) and R.C.2913.02(A)(1), a second degree misdemeanor, and criminal trespass in violation of R.C. 2911.21(A)(1), a fourth degree misdemeanor. Fisher pled not guilty to the charges and proceeded to a jury trial, which was held February 22-23, 2021.

{¶10} Just after the case was submitted to the jury for deliberations, an alternate juror came forward to inform the trial court and the parties of concerns over two comments that had been made by a member of the jury during recesses in the trial. The alternate juror explained the comments, then the trial court and the parties asked the alternate juror questions regarding the comments. The trial court determined that it would allow deliberations to proceed; however, in the event that the jury found Fisher guilty of any of the charges, the trial court indicated it would allow the jury to be polled and questioned regarding the purportedly improper comments.

{¶11} Ultimately the jury found Fisher guilty of all counts in the complaint. The jury was then asked whether they had heard any of the improper comments made by a fellow juror and only a few had. The jurors were asked if they were influenced by the comments and they indicated that they were not. All jurors, including the juror who made the purportedly improper comments, indicated that they made their determination based on the evidence.

{¶12} Nevertheless, Fisher moved for a mistrial and requested a new trial based on juror misconduct. The state filed a written response. On April 13, 2020, the trial court filed a judgment entry overruling Fisher's motion for a new trial.

{¶13} On April 13, 2020, the matter proceeded to sentencing. Fisher was sentenced to 180 days in jail on the failure to comply with order or signal of police

officer charge, 90 days in jail on the attempted theft charge, and 30 days in jail on the criminal trespass charge. The jail terms were ordered to be served consecutively, for an aggregate term of 300 days. A judgment entry memorializing Fisher's sentence was filed that same day. It is from this judgment that Fisher appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The Trial Court committed error in overruling the defendant's oral motion for a new trial pursuant to Criminal Rule 33(A) and determining the best course of action was to let the jury finish its deliberations and render a verdict and further erred by not conducting a hearing before all parties at that time when the court had an opportunity to investigate and address the alleged irregularities before the verdict was accepted by the trial court.**

**Assignment of Error No. 2**
**The Trial Court committed error in overruling defendant's oral motion for a new trial pursuant to Criminal Rule 33(A) when juror misconduct substantially affected defendant's material rights to be tried by a fair and impartial jury.**

{¶14} As both assignments of error address the trial court's denial of Fisher's motion for a new trial, we will address them together.

*First and Second Assignments of Error*

{¶15} In his first assignment of error, Fisher argues that the trial court erred by permitting the jury to continue its deliberations in this matter before investigating the purportedly improper juror comments and how the comments impacted the jury. In his second assignment of error, Fisher argues that the juror's comments

constituted misconduct and they affected Fisher's substantial rights. Thus he contends the trial court abused its discretion by denying his motion for a new trial.

Standard of Review

{¶16} A determination on a Crim.R. 33 motion for a new trial is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Cummings*, 8th Dist. Cuyahoga No. 106261, 2018-Ohio-3993, ¶ 19, citing *State v. Schiebel*, 55 Ohio St.3d 71, 77 (1990). " 'The term "abuse of discretion" * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, (1980).

{¶17} Furthermore, as to Fisher's claim that the trial court mishandled the inquiry into the juror's purportedly improper comments, the Supreme Court of Ohio has held that "[a]s a reviewing court, we show deference to the trial judge, who sees and hears the events and thus is in a better position to accurately evaluate the situation and determine the appropriate scope of inquiry." *State v. Hessler*, 90 Ohio St.3d 108, 115-116, 2000-Ohio-30, citing *State v. Huertas*, 51 Ohio St.3d 22, 29 (1990). Therefore, we employ an abuse-of-discretion standard as to how the trial court handled alleged juror misconduct. *Id*. citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

Relevant Authority

**{¶18}** Pursuant to Crim.R. 33(A)(2), "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: * * * (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state." A new trial shall not be granted on this or any other of the allowed grounds of Crim.R. 33 "unless it affirmatively appears from the record that the defendant was prejudiced thereby or was prevented from having a fair trial." Crim.R. 33(E)(5).

**{¶19}** In addressing claims of juror misconduct, a court must employ a two-step analysis. First, a court will determine whether juror misconduct occurred, and second, if juror misconduct is found, the court will determine whether the misconduct materially affected the defendant's substantial rights. *State v. Taylor*, 73 Ohio App.3d 827, 833 (4th Dist.1991); *State v. Samatar*, 152 Ohio App.3d 311, 2003-Ohio-1639, ¶ 35 (10th Dist.). The party complaining of alleged juror misconduct must establish prejudice. *State v. Edwards*, 10th Dist. Franklin No. 17AP-738, 2019-Ohio-3012, ¶ 52.

Analysis

**{¶20}** In order to determine whether juror misconduct occurred in this matter, and whether the trial court erred in the procedure that was conducted to determine potential juror misconduct, we must review the specifics of what

transpired in its proper context. The first time the trial court and the parties were made aware that there was any purported juror misconduct was after the case had been submitted to the jury for deliberations. At that time, an alternate juror approached the trial court and indicated that a member of the jury had made some potentially inappropriate comments. The trial court asked the alternate juror to explain the comments and the following exchange occurred.

> **[Alternate Juror]: Yesterday the comment was – he said, I'm no lawyer or anything, but don't both sides get to review the same evidence.**
>
> **COURT: And that was – was that concerning one of the objections made when we took a break?**
>
> **[Alternate Juror]: Yes, exactly.**
>
> **COURT: Okay. Was there any response from the other members to that?**
>
> **[Alternate Juror]: Uh—no, no real response uh—somebody may have said mmm—I don't know or something, but I don't know anybody – but basically that was the end of it. Uh—it felt inappropriate at that time and that's why there was so much silence there, so uh—I'm sorry for all this but it's just in good conscience. I want to make sure it's known. I don't know what's appropriate and what's not. I know I was instructed to not speak of the case at all. I basically didn't speak at all, uh—even when they were talking about general just day to day stuff, weather, whatever.**
>
> **COURT: [Prosecutor] on this point do you have any questions?**
>
> **[Prosecutor]: Uh—the only question is – it will probably be the same question for your next tidbit, but again, this was said yesterday correct?**

**[Alternate Juror]:  Correct.**

**[Prosecutor]:   So it was said before the instructions the Judge were given – gave at the end just now before we all left?**

**[Alternate Juror]:   Today, yes.**

**[Prosecutor]:  Okay.**

**[Alternate Juror]:    But he had instructed us many times not to discuss the case when we were in there.**

**[Prosecutor]:  Sure, but as far as that comment, he made that – it was before the final instructions?**

**[Alternate Juror]:  Correct.**

**[Prosecutor]:  Okay.**

**COURT:  [Defense counsel]?**

**[Defense Counsel]:  Thank you your honor.  Did you get the sense when he made that statement uh—did he give you a sense that he kind of fashioned some kind of thought of concept in his mind of my client's innocence or guilt?**

**[Alternate Juror]:   Uh—I didn't personally, but I did feel like it could be construed that way by somebody else.**

**[Defense Counsel]:   Did he seem incredulous because we were contesting whether information had been presented?**

**[Alternate Juror]:  Yes, that's how it felt. And again, I don't know cause we were ushered out, but it seemed to me that you did not get some point of evidence, I believe it was a video clip or something yesterday and uh—we were moved out pretty quickly and uh—that's when he made that comment.**

**[Defense counsel]:  Okay, thank you for that.**

**COURT: Okay, can you explain the comment made earlier today?**

**[Alternate Juror]: The comment today was uh—he doesn't – isn't – I think he said isn't the defendant going to testify. Uh—and then he said – he had like a short pause there and then he said if I were uh—if I were innocent I would want to testify, uh—that's what he said and then another juror did say uh—I don't think that uh—the defendant has to testify. Then that was the end of that conversation. Again it created a pause uh—kind of an uneasy pause uh—after that statement just cause it, to me, at least personally, felt really inappropriate.**

**[Prosecutor]: Yes your honor. Same question uh—I had before, was that, when the second comment was made was that before Judge gave his final instructions to the jury?**

**[Alternate Juror]: Yes.**

**[Prosecutor]: Okay. All right. No further questions.**

**COURT: And [defense counsel].**

**[Defense counsel]: I just want to confirm, do you feel like that was complying with the Court's instructions early on which was not to discuss innocence or guilt or about what was a proper presumption to make whether the defendant took the stand or not?**

**[Alternate Juror]: I don't feel it was appropriate, no.**

(Tr. at 336-340).

{**¶21**} According to the parties, Fisher orally moved for a mistrial after this discussion, but the trial court denied the request at that time.[1] The trial court

---

[1] This was not recorded in the transcript but the parties and the trial court are in agreement that it occurred.

-11-

indicated that the jury would be allowed to deliberate, and if any guilty verdicts were returned, the jury could be questioned regarding any comments that had been made, whether the comments were heard, and whether they had any impact on the matter.

{¶22} The jury returned guilty verdicts on all counts against Fisher. After the verdicts were read, the jury was polled and the jurors individually indicated that the verdicts announced were their true, individual verdicts.

{¶23} The trial court then addressed the jury and stated that an issue had been brought to the court's attention regarding comments that had been made by a juror regarding a defendant's right not to testify. The trial court told the jury that the court was going to permit the parties to inquire regarding the comments.

{¶24} Following some questioning, defense counsel was able to identify the juror who made the comments and he addressed the juror directly. Defense counsel stated, "There was a statement made today that [you said] why wouldn't you take the stand if you weren't guilty. Did you make that statement?" (Tr. at 346). The juror responded

> **I don't know if I made the statement in that – with those remarks um.. I had questions why the defendant wouldn't take the stand. Because my understanding that the defendant would take the stand. Take the stand and be questioned by the attorneys so the comment wasn't in either way persuaded in any decision as to what my verdict in the trial is.**

(Tr. at 346).

-12-

{¶25} The juror was then asked if he recalled in voir dire that if the defendant did not take the stand it did not mean he was guilty or not guilty. The juror indicated he vaguely recalled that. When asked, the juror also stated that he recalled the judge giving an instruction that he was not permitted to consider "that" before the juror made any statement with regard to the defendant testifying. Further, the juror indicated he recalled being instructed not to talk about guilt, or anything regarding the proceedings, amongst the jury prior to deliberations.

{¶26} After the juror who made the comments was addressed directly, the jury as a whole was asked who had heard the comments made by the juror in question regarding the defendant testifying, and three jurors indicated that they heard a comment. When questioned about whether the comment impacted his opinion, one juror indicated that he did not consider why the defendant would not take the stand, but he "wondered if it was an actual thing that they have a choice so I understand they have a choice to or not to (inaudible)." (Tr. at 349). Another juror indicated she was aware even before the trial court's instructions that a defendant did not have to take the stand. The third juror who heard the comment indicated the comment did not influence which way he was going to vote.

{¶27} Defense counsel then re-addressed the juror who made the purportedly improper comment, or asked a purportedly improper question. Defense counsel asked the juror to clarify why he asked the question regarding the defendant

testifying and the juror stated, "I wasn't I wasn't [sic] ah aware whether he would take the stand or not take the stand and I had asked the question because I wasn't understanding as to actual proceedings of them taking the stand and not taking the stand." (Tr. at 350).

{¶28} Defense counsel then replied, "Well the alternate juror[']s position on this when he testified was that you said 'why would you take the stand if you weren't guilty.' " (*Id.*) The juror responded, "I didn't say it like that. I don't believe that it was said it [sic] like that at all." (*Id.*) Following the response, defense counsel indicated he had no further questions.

{¶29} The prosecutor then asked each juror individually, "when reaching your verdict in this case did you come to your decision based on the testimony as its presented, the law, the judge's instructions, and nothing else?" (Tr. at 351). All eight jurors responded that they only considered the information and evidence presented as instructed.

{¶30} Following the prosecutor's question, the judge specifically stated to the jury:

> **The instructions you were given was that it is not necessary for the defendant to take the witness stand in his own defense. He has a constitutional right [not] to testify. You must not consider the fact he did not testify for any purpose. Did any of you, * * * did you consider his not testifying for any purpose? Did you [sic] whether or not he testified for any purpose?**

(Tr. at 353). In response to the judge's question, each juror individually affirmatively indicated that he or she did not consider the fact that Fisher did not testify for any purpose.

{¶31} Notwithstanding these statements, Fisher moved for a new trial, alleging juror misconduct in this matter. The trial court permitted briefing on the issue, then filed a written entry analyzing the issue of juror misconduct. Ultimately the trial court denied Fisher's motion for a new trial. The trial court found that one comment was procedural in nature and did not constitute misconduct. Next, the trial court determined that any other purportedly improper comments by one juror were made prior to the trial court's final instructions, wherein the jury was specifically instructed that Fisher had a constitutional right not to testify and that the jury could not consider the fact that he did not testify for any purpose. Further, the trial court indicated that all of the jurors were individually questioned and they all indicated that the verdicts were based on the testimony and evidence presented during trial. Finally, the trial court determined that Fisher was not prejudiced by the comments made by the juror and that, even absent the comments, the jury would have been able to find Fisher guilty based on the totality of the evidence.

{¶32} On appeal, Fisher raises two primary issues with the trial court's denial of his motion for a new trial. First, he contends that the trial court had a duty to hold a hearing *immediately* upon learning of the purportedly improper comments of the

juror and thus the trial court erred by allowing deliberations to continue before questioning the jury regarding the purportedly improper juror comments.

{¶33} While it might have been a permissible *option* to question the jury about potentially improper comments prior to the jury rendering a verdict, the important fact is that the trial court held what amounted to a hearing on the alleged juror misconduct wherein the purported misconduct was addressed, regardless of the timing of the hearing. The Supreme Court of the United States has stated: "If the hearing and determination to replace a juror during trial would have adequately protected respondent's right to due process of law * * * we see no reason why a post-trial hearing and determination would be any less protective or possible." *Smith v. Phillips*, 455 U.S. 209, 218, 102 S.Ct. 940, 946 (1982) at fn 8. Here, the trial court specifically inquired regarding the comments after the verdict was announced and allowed the parties to inquire as well. Although the trial court could have interrupted the deliberations to address the matter, there is no indication that a post-deliberation inquiry was any less sufficient than a pre-deliberation inquiry would have been.

{¶34} The fact is, the trial court had a duty to hold a hearing and it did so. *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, ¶ 36, citing *State v. Phillips,* 74 Ohio St.3d 72, 88–89 (1995) ("[W]hen a trial court learns of possible improprieties that might affect the impartiality of a juror, the court has a duty to hold

a hearing to determine whether any bias has been introduced into the jury room."). Fisher cites no legal authority that the hearing or inquiry by the trial court had to be done *prior* to deliberations. Rather, the important issue was that the trial court inquire into possible prejudice with a juror and to give the parties an opportunity to address any alleged juror bias. *See Gunnell* at ¶ 37. Even the seminal case of *Remmer v. U.S.*, 347 U.S. 227, 74 S.Ct. 450, did not indicate that a hearing on possible juror misconduct had to occur *prior* to deliberations. Therefore, in the absence of authority to the contrary, we cannot find that the trial court abused its discretion by the way it conducted the inquiry into the matter of juror misconduct. This is particularly true given that if the jury had returned not guilty verdicts, any need for a hearing would have been completely obviated. Accordingly, Fisher's first assignment of error is overruled.

{¶35} Next, Fisher argues that there was juror "misconduct" in this matter and that the misconduct substantially affected his material rights. Because of what he claims was juror misconduct, he contends that the trial court abused its discretion by denying his motion for a new trial.

{¶36} Notably, from the inquiry into the matter, it is unclear exactly what the juror actually said in the jury room, thus it is difficult to label it affirmatively as misconduct. Nevertheless, even if we assumed the worst form of the juror's statements as expressed through the alternate juror, and even if we assumed that

they were misconduct, there is no indication that the comments impacted Fisher's substantial rights. In fact, the inquiry by the parties and the trial court into the matter shows just the opposite.

{¶37} The jurors were specifically asked whether they considered Fisher's decision not to testify for any purpose, and the jurors indicated that they did not. "A juror's belief in his or her own impartiality is not inherently suspect and may be relied upon by the trial court." *State v. Phillips*, 74 Ohio St.3d 72, 89 (1995), citing *Smith v. Phillips*, 455 U.S. at 217, 102 S.Ct. at 947 at fn. 7.

{¶38} Furthermore, as the trial court stated in its entry denying Fisher's motion for a new trial, any errant comments made by one juror were *prior* to the trial court's final jury instructions in this case, which specifically stated, "It is not necessary that the defendant take the witness stand in his own defense. He has a constitutional right not to testify. You must not consider the fact that he did not testify for any purpose." (Tr. at 331). Pursuant to the Supreme Court of Ohio, "A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge." *State v. Garner*, 74 Ohio St.3d 49, 59 (1995), citing *State v. Loza*, 71 Ohio St.3d 61, 75 (1994).

{¶39} There simply is no indication of prejudice in this case, even assuming that the juror's comments were improper. To the contrary, the jury members were very specifically and explicitly questioned regarding the comments and the jury

-18-

members indicated that their verdicts were made based only on the evidence presented. Given the inquiry and the jury's responses, we cannot find that the trial court abused its discretion by denying Fisher's motion for a new trial. Therefore, Fisher's second assignment of error is overruled.

*Conclusion*

**{¶40}** For the foregoing reasons Fisher's assignments of error are overruled and the judgment and sentence of the Auglaize County Municipal Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and MILLER, J.J., concur.**

**/jlr**