[Cite as *State v. Martin*, 2025-Ohio-420.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

CEDRIC DIMAGGIO MARTIN,

    DEFENDANT-APPELLANT.

CASE NO. 9-24-23

O P I N I O N

---

**Appeal from Marion County Common Pleas Court
General Division
Trial Court No. 24-CR-026**

**Judgment Affirmed**

**Date of Decision: February 10, 2025**

---

**APPEARANCES:**

    *April F. Campbell* **for Appellant**

    *Allison M. Kesler* **for Appellee**

**WALDICK, P.J.**

{¶1} Defendant-appellant, Cedric Martin ("Martin"), appeals the judgment of conviction and sentence entered against him in the Marion County Court of Common Pleas, following a jury trial in a domestic violence case. For the reasons set forth below, we affirm.

*Procedural History and Factual Summary*

{¶2} This case originated on January 31, 2024, when a Marion County grand jury returned a two-count indictment against Martin, charging him as follows: Count 1 – Domestic Violence, a third-degree felony in violation of R.C. 2919.25(A) and (D)(4); and Count 2 – Strangulation, a fourth-degree felony in violation of R.C. 2903.18(B)(3) and (C)(3).

{¶3} On February 5, 2024, an arraignment was held and Martin pled not guilty to the indictment.

{¶4} On April 16, 2024, a jury trial was held in the case, during which the State of Ohio presented the testimony of three witnesses and admitted six photographic exhibits.

{¶5} The evidence established that at approximately 9:00 p.m. on October 24, 2023, Lisa Woods ("Lisa"), an insurance agent, was heading home from an appointment at a client's house in Marion. As Lisa was driving down the 300 block of Uncapher Avenue, she nearly hit a woman who ran out in front of Lisa's car. The

woman was screaming, "Help me, help me. He's strangling me, he's gonna F-ing kill me." (Tr., 87). Lisa stopped to assist the woman, and then called 911. While waiting with the woman for the police to arrive, Lisa noticed a black male standing by the front porch of a nearby home. At trial, Lisa identified Martin in the courtroom as being the male she observed on the porch. The police arrived a few minutes later and, after providing her contact information, Lisa continued on her way.

{¶6} The victim in the case, Brittany B. ("Brittany"), testified that in October of 2023, she and Martin had been in a romantic relationship for approximately six months and the two were living together at 336 Uncapher Avenue in Marion. In the early evening of October 24, 2023, Brittany was home alone watching a movie in bed when Martin returned from an out-of-town trip. Upon arriving home, Martin came into their bedroom and accused Brittany of sleeping with another man while Martin had been away. As Brittany began to deny the accusation, Martin jumped on the bed and began repeatedly striking Brittany in the face with his fist. When Martin finally quit hitting her, Brittany started to move away, but Martin grabbed her, threw her down, and slammed her head into the floor. Martin then put his hands around Brittany's neck and started strangling her. Brittany was unable to breathe and reached the point where she started blacking out, while also involuntarily urinating. Just as she thought she was going to pass out from the lack of oxygen, Brittany was able to get her leg up, and she kicked Martin as hard as she could. While Brittany struggled to breathe and regain her focus, Martin said he was going

to get a knife and told her not to move. Martin started walking to the kitchen and Brittany attempted to escape out the front door, but Martin heard her and told her to sit down in the bedroom. Brittany then backed up into the bedroom and waited until Martin walked further away. At that point, she ran out the front door and began running to the neighbor's home across the street. While doing so, Brittany ran in front of a car that she did not realize was in the street. Brittany told the female driver of the car that she needed help and the woman called 911. While waiting on the police, Martin briefly came out of the house, but then disappeared. Police arrived and checked the house, but Martin could not be located at that time. The police stayed with Brittany until an ambulance arrived. At trial, Brittany identified six photographs that were taken that night and which depicted the various injuries she suffered as a result of being attacked by Martin.

{¶7} Officer Bryce Lowry of the Marion City Police Department was the final prosecution witness at trial. Lowry confirmed that, on October 24, 2023, he and two other police officers responded to a call for help in the area of 336 Uncapher Avenue. Lowry testified that, upon arrival, Brittany was upset, crying, and breathing heavily. She blurted out that her boyfriend, Martin, had assaulted her. Lowry testified as to the various injuries suffered by Brittany that he observed. Lowry and another officer thoroughly searched Brittany's house at 336 Uncapher Avenue, but Martin was not located in the home. An ambulance was called for Brittany, and she was taken to the hospital.

{¶8} At the conclusion of the trial, the jury returned verdicts finding Martin guilty of Domestic Violence, a first-degree misdemeanor, and Strangulation, as charged in the indictment. The trial court accepted the verdicts and ordered a presentence investigation.

{¶9} On April 22, 2024, Martin filed a motion for a new trial on the basis of alleged juror misconduct. On April 27, 2024, the prosecution filed a response in opposition to Martin's new trial motion.

{¶10} On April 29, 2024, the trial court held a hearing on the issues raised by Martin's motion for a new trial. The juror at issue, "L.D.", was sworn in and then questioned by the court and counsel. Following arguments on the new trial motion being made by counsel for the parties, the trial court overruled the motion.

{¶11} A sentencing hearing was then held. Martin was sentenced to 180 days of local jail time on Count 1, and to 18 months in prison on Count 2, to be served concurrently. On May 2, 2024, the trial court filed its judgment entry of sentencing.

{¶12} On May 24, 2024, Martin filed the instant appeal, in which he raises one assignment of error for our review.

## Assignment of Error

**The trial court committed reversible error by denying defendant's motion for a mistrial due to juror misconduct.**

*Assignment of Error*

**{¶13}** In the sole assignment of error, Martin asserts that the trial court erred in not granting a mistrial on the basis of juror misconduct. However, based on the content of Martin's argument on appeal, and because the issue related to alleged juror misconduct was not asserted until following the conclusion of the trial, by way of a motion for a new trial, it is apparent that Martin is actually asserting that the trial court erred in denying his motion for a new trial on the basis of juror misconduct.

**{¶14}** The record of the April 29, 2024 hearing on Martin's motion for a new trial reveals that, at the start of that hearing, the trial court noted that Marion County Prosecutor Ray Grogan had contacted the court after the trial was concluded. At that time, Grogan had disclosed some information about a juror in the case that had come to Grogan's attention.

**{¶15}** At the hearing, Grogan was then asked by the trial court to explain the information that he had disclosed. In response, Grogan stated that a longtime, very good friend of his, "J.D.", was the husband of a woman, "L.D.", who had served as a juror in the case. Grogan stated that, after the jury had reached a verdict, he and J.D. spoke on the phone. J.D. told Grogan that L.D. had really enjoyed serving as a juror. However, according to Grogan, J.D. also revealed that he had talked to his wife over the lunch recess during the trial, at which time his wife had told him that the case involved allegations of strangulation and also that the defendant had made

a facial expression that did not seem appropriate to her. After hearing that information from J.D., Grogan felt that he had an ethical obligation to share that information with the trial court and defense counsel, which he then did.

{¶16} At the April 29th hearing, following Grogan's explanation of the information he had received from his friend, L.D. was then sworn in as a witness, and she was questioned by the court and counsel. L.D. testified that, during the trial, she called her husband at around 12:30 p.m., during the lunch break. L.D. testified that she called her husband in order to make arrangements for him to pick up their daughters at the babysitter's later that day, because L.D. was not sure how late she would be at the courthouse. L.D. testified that, during the phone conversation, her husband asked how things were going and what the case was about. L.D. testified that, while she did not think she should discuss the trial, she ended up telling him it was a domestic violence case. When her husband asked what had happened in the case, L.D. told him that she could not discuss it. L.D. testified that the couple then moved on to a different topic of conversation; however, L.D. testified that she also told her husband that the person on trial in the case was smiling during jury selection.

{¶17} L.D. was specifically asked whether, during that phone call, she and her husband had discussed any of the evidence that had been presented, and L.D. testified that they had not. L.D. further confirmed that she at no point conveyed to her husband that she had made up her mind about the case, or that she had

determined what the outcome would be. Finally, L.D. testified that she later spoke further to her husband about the trial, but not until after the trial was done.

**{¶18}** Following the completion of L.D.'s testimony at the April 29, 2024 hearing, defense counsel argued that the juror's telephone conversation with her husband during the trial amounted to juror misconduct that required a new trial be granted. The prosecution argued that the telephone conversation was innocuous and not prejudicial to Martin, as the juror did not reveal any specifics about the evidence and merely commented that the defendant made a face during voir dire.

**{¶19}** From the bench, the trial court then overruled Martin's motion for a new trial. Specifically, the trial court found that the juror's trial-related conversation with her husband during the trial was limited to the fact that she had been selected as a juror and a mention of what the subject matter of the trial was. Based on those facts, the trial court determined that the conversation did not amount to juror misconduct. In support of that determination, the trial court further noted that potentially commenting about the defendant smiling or making some facial expression had not resulted in the juror prematurely forming an opinion about the case, and the juror did not discuss the evidence and was not doing any outside research that may have improperly influenced her decision. The trial court further found that, even if the juror's phone conversation with her husband was construed as juror misconduct, the defendant's substantial rights were not materially affected by the comments made by the juror to her husband over the lunch break.

{¶20} Crim.R. 33 governs motions for a new trial. Pursuant to Crim.R. 33(A)(2), "[a] new trial may be granted on motion of the defendant for any of the following causes affecting materially the defendant's substantial rights: * * * (2) [m]isconduct of the jury, prosecuting attorney, or the witnesses for the state[.]"

{¶21} In addressing claims of juror misconduct raised pursuant to Crim.R. 33(A)(2), a court must employ a two-step analysis: first, the court must determine whether juror misconduct occurred; and, second, if juror misconduct is found, the court must determine whether the misconduct materially affected the defendant's substantial rights. *State v. Fisher*, 2021-Ohio-3788, ¶ 19 (3d Dist.). Such prejudice must be established by the party complaining of alleged juror misconduct. *Id.*

{¶22} "A determination on a Crim.R. 33 motion for a new trial is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion." *Fisher*, at ¶ 16. *See, also*, *State v. Schiebel*, 55 Ohio St.3d 71, 76 (1990). "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). "When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court." *State v. Pryor*, 2024-Ohio-3154, ¶ 55 (3d Dist.), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶23} After reviewing the record in the instant case, we concur with the trial court's ultimate determination that, even if the juror's telephone conversation did

amount to juror misconduct, Martin failed to demonstrate that his substantial rights were materially prejudiced thereby. While the trial was still ongoing, the juror's communication with her husband about the trial was extremely limited in scope, and went no further than her expressing that she had been seated as a juror, that the case involved a charge of domestic violence, and that the defendant had smiled during voir dire. There was no evidence that any discussion was had about the actual evidence that had been presented and, more importantly, there is no indication that any outside influence or extraneous prejudicial information was improperly brought to the juror's attention during the phone call. In other words, there is nothing in the record to indicate that the jury's verdicts were ultimately influenced by the single juror's brief phone conversation with her husband over the lunch recess during trial. Accordingly, we find that the trial court did not abuse its discretion in overruling Martin's motion for a new trial.

{¶24} The assignment of error is overruled.

*Conclusion*

{¶25} Having found no error prejudicial to the defendant-appellant, Cedric Martin, in the particulars assigned and argued, the judgment of conviction and sentence entered in the Marion County Court of Common Pleas is affirmed.

***Judgment affirmed***

**MILLER and WILLAMOWSKI, J.J., concur.**

**/jlm**